187 So.2d 690 (1966)
J. Peter MARINELLI and Elizabeth M. Marinelli, Appellants,
v.
G.C. WEAVER, Appellee.
No. 5558.
District Court of Appeal of Florida. Second District.
June 8, 1966.
Rehearing Denied July 7, 1966.
W. Furman Betts, Jr., of Holland & Betts, St. Petersburg, for appellants.
McCutcheon, Stevens & Fleece, St. Petersburg, for appellee.
PIERCE, Judge.
This is an appeal by J. Peter Marinelli and Elizabeth M. Marinelli, two of the defendants in the Court below, from a final judgment entered on June 30, 1964, in a common law action brought by G.C. Weaver to recover upon a defaulted promissory note signed on April 16, 1960, by the Marinellis and also John H. Garner, Christine L. Garner, and St. Pete Auto Parts, Inc., a Florida corporation, in favor of Weaver in the sum of $65,699.27, payable in monthly installments *691 of $510.00 including interest. The case was tried by the Circuit Judge without a jury, resulting in a judgment being entered against St. Pete Auto Parts, Inc., and the two Marinellis in the amount of $57,755.16, constituting the unpaid balance on the note, and a further sum as attorney's fee. The Garners had been eliminated from the suit by the time of trial. The corporation did not defend the action, but the two Marinellis did defend, and have appealed to this Court.
The complaint filed by Weaver was in the usual form alleging execution of the note by the five named parties, and that the defendants were in default on three monthly payments, because of which Weaver had elected, under provisions of the note, to declare the whole principal sum due with interest and attorney's fee. The note was executed on behalf of St. Pete Auto Parts, Inc. by John H. Garner, President, and by each of the two Garners and the two Marinellis separately, on separate lines, each under seal, and with the word "Individually" typewritten in after each of their names, immediately beneath their respective signatures.
The Marinellis alone filed joint answer, which admitted execution of the promissory note sued upon but denied there was any consideration therefor or that they had executed the same "as accommodation makers or endorsers." The answer further alleged that, at the time the note was signed, there was also executed contemporaneously therewith an agreement, a bill of sale, and a chattel mortgage, whereby Weaver sold his auto parts business theretofore conducted by him at 230 21st Street So., St. Petersburg, consisting of extensive personal property used in the operation of said business. Included also was a lease with option to purchase on the buildings and real estate premises where the business was located. In the agreement Weaver was the seller, and the buyer was described as St. Pete Auto Parts, Inc., a corporation which was ostensibly organized at that time by the Marinellis and the Garners for purpose of providing a convenient legal entity. The total purchase price was $75,000.00, payable $2,500.00 cash previously given, $7,500.00 at closing, and the balance of $65,000.00 evidenced by a promissory note, secured by a chattel mortgage and also the pledging of the stock of the newly formed corporation, which was all owned by the four individuals. The corporation and also the four named individuals all signed the agreement as buyers, and all signed the chattel mortgage as mortgagors, with notarization of all individual signatures.
The answer alleged that the Marinellis signed the agreement "in their individual capacity * * * solely for the purpose of agreeing to the pledge and sale upon default of the stock owned by them in the Buyer corporation", that "at the time of execution and delivery of said documents it was not the intent of these defendants to incur personal liability through the execution thereof as makers or endorsers, through accommodation or otherwise", and that "the execution of said promissory note by the defendants was a gratuitous act totally without consideration and therefore unenforceable as against them."
The trial produced no substantial factual conflict. Only plaintiff Weaver and defendant J. Peter Marinelli testified.[1] The trial Judge, finding that "the Plaintiff having proven his claim and the Defendants having failed to sustain their defenses or any of them", entered judgment against the corporation and the two Marinellis.
The assignments of error, with one exception hereinafter separately considered, raised generally the single question of the liability of the two Marinellis on the promissory note in question. It is contended that the note "contains promises by said defendants to do specific acts in addition to the payment of money", presumably to give back a chattel mortgage to Weaver and to *692 also pledge their stock in the corporation as security and collateral; thus and thereby, so the reasoning goes, rendering the note non-negotiable. To this, appellee Weaver candidly concedes that the note was not negotiable, and that he was suing simply on a right of contract, the contract being a promise in writing to pay a certain sum of money to him upon a valid and sufficient consideration.[2] It is further contended that the note "recites" a consideration, but at the same time refers to a collateral agreement "which, in turn, refers to a lease and bill of sale in favor of the corporation only", and that such facts immunize the individual defendants from liability.
The case of Betz v. Bank of Miami Beach, Fla. 1957, 95 So.2d 891, is clearly dispositive of such contention adverse to the Marinellis. In Betz there were two notes involved, each made to the bank and each containing the words "the undersigned jointly and severally promise to pay to the Bank of Miami Beach * * *", finally winding up with the typewritten words thereon, "Corvette of Miami, Inc." under which corporate name were the signatures of one Kaye and one Betz who were respectively the President and Secretary-Treasurer of the named corporation. Suit upon the notes was brought by the bank upon non-payment, and from an adverse judgment entered against the corporation and the two individuals, Betz appealed. He contended, as do the Marinellis here, that his signing of the note under the circumstances aforesaid did not obligate him as an individual maker thereof. Holding contrary to such contention, the Supreme Court said (text 95 So.2d 894):
"In the notes before us there is nothing other than the name of the corporation, typed above the signatures of Kaye and Betz to indicate that the payee and makers of the notes considered the instrument not to be binding on Betz as an individual maker. Betz signed exactly as he would have if it had been his intention to bind himself individually. His signature as written makes him personally liable as maker."
In the case sub judice the facts are even stronger than in Betz. Here there is no confusion as to the capacity in which the individuals signed the note. It was signed first on behalf of the corporation, "by John H. Garner (signature), President", with the corporate seal attached, and then by each of the individual persons separately, with the word "Individually" typewritten after each of their signatures.
F.S. Sec. 674.32 F.S.A., which has been part of the Statute law of Florida since 1897, provides:
"674.32 Accommodation party
"An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."[3]
Insofar as Weaver is concerned, it matters not whether the Marinellis were accommodation makers or accommodation sureties or even accommodation indorsers. As to Weaver, they stand equally obligated as the principal makers. This has always been one of the rules of the Law Merchant. See Bass v. Geiger, 73 Fla. 312, 73 So. 796; Fannin v. Fritter, etc., 127 Fla. 97, 172 So. *693 691; Falk v. Salario, 108 Fla. 135, 146 So. 193; Rapp v. Demmerle, Fla. 1952, 61 So.2d 481; Furlong v. Leybourne, Fla.App. 1962, 138 So.2d 352.
The Marinellis were clearly liable as accommodation makers on the note, and the learned trial Judge was correct in so holding.
For the first time in this case, the Marinellis contend in this appellate Court that the judgment against Mrs. Marinelli was invalid and should be reversed as to her, because of the provisions of Sec. 1, Art. XI of the Florida Constitution, F.S.A., which provides inter alia that the separate property of the wife "shall not be liable for the debts of her husband without her consent given by some instrument in writing executed according to the law respecting conveyances by married women", which means it must be acknowledged and also witnessed by at least two witnesses. The Supreme Court case of Jette v. Harbison, 1947, 158 Fla. 418, 28 So.2d 858, followed by the 2nd Dist. Ct. case of First National Bank of Melbourne v. Berg, Fla.App. 1963, 153 So.2d 331, and the 3rd Dist. Ct. case of First National Bank of South Miami v. Hoover, Fla.App. 1964, 163 So.2d 543, are cited in support thereof. In a proper case, the contention made is sound. It only remains to be determined whether the rule is applicable to the facts of the instant case, and whether appellants are now in position to raise the question.
Taking these qualifying matters up in reverse order, we have alluded to the failure of any of the parties litigant to raise the question at any stage of the proceedings in the lower Court. It was not mentioned in the pleadings, not mentioned in any of the testimony, and Mrs. Marinelli did not in fact even testify. J. Peter Marinelli does not include the point in his assignments of error, and Elizabeth M. Marinelli merely copied the other Marinelli's assignments, but does include a vague additional assignment that "the Court erred in its interpretation and application of the applicable law." However, the point has been extensively dealt with in this Court, both in adversary briefs and in oral argument.[4]
It has been settled for at least the past fifty-six years in this State that "a question of law which was not presented to nor passed upon by the trial Court cannot be raised on appeal." Mizell Live Stock Co. v. J.J. McCaskill Co., 59 Fla. 322, 51 So. 547; Collins Avenue & Ocean Inv. Co. v. Crawford, 1934, 114 Fla. 469, 154 So. 211; Mizner Land Corporation v. Abbott, Fla. 1937, 128 Fla. 489, 175 So. 507; Jones v. Neibergall, Fla. 1950, 47 So.2d 605; Foley v. State ex rel. Gordon, Fla. 1951, 50 So.2d 179; Wasserburg v. Coastal Aluminum Products Const. Co., Fla.App. 1964, 167 So.2d 889.
In Love v. Hannah, Fla. 1954, 72 So.2d 39, the Supreme Court reiterated the foregoing rule, but further observed that "one well recognized exception is that error affecting fundamental rights may be raised for the first time on appeal." See also the headnote in Clark v. Osceola Clay & Top Soil Co., Fla. 1957, 99 So.2d 869.[5] We are also cognizant of Rule 3.7, subd. i, Fla.App. Rules, 31 F.S.A., which provides inter alia that "[t]he Court, in the interest of justice, *694 may notice jurisdiction or fundamental error apparent in the record-on-appeal, whether or not it has been argued in the briefs or made the subject of an assignment of error, or of an objection or exception in the court below."[6] The cases and rule cited do not make it mandatory on the appellate Court to consider such questions, even though meeting the tests laid down. In view of all the facts in the instant case, however, or rather in spite of them, we indulge our discretion to consider the point as to validity of the judgment against Mrs. Marinelli in the light of the Constitutional provision.[7]
In Jette v. Harbison, supra, the payee on the note therein involved had already secured a judgment against the wife and the question certified to the Supreme Court was whether or not such judgment could be satisfied by an execution against the wife's separate property, it being admitted that the note was given originally for the husband's debt and was not sealed or witnessed. The Supreme Court answered in the negative, but without holding in terms that the judgment previously entered against the wife was void. So it was that it was later contended before this Court in First National Bank of Melbourne v. Berg, supra, that Art. XI, Sec. 1, of the Constitution "mercy bars execution upon a judgment for the husband's debts when the constitutional formalities are not observed and does not bar entry of the judgment." But such contention was rejected in an opinion written by Chief Judge Allen who held that "[t]o attain the objects clearly intended in the adoption of Art. XI, Section 1, judgment against as well as execution upon the wife's separate property must be barred."
So if the foregoing cases were controlling, we would have to hold the judgment entered against Mrs. Marinelli the wife, to be improper and set the same aside. But appellee contends that those cases are not controlling for the reason that they rest upon the premise that the wife's signing of the promissory note was for purpose of paying the debts of her husband, while here Mrs. Marinelli signed the note, not to pay any debt of her husband, but as surety upon the debt of the corporation, and that in the latter instance the wife is liable. The case of Continental Can Co., Inc. v. Lee Co., Inc., Fla. 1949, 40 So.2d 783, is cited in support of such contention. There, W.E. Lee and his wife, M.M. Lee, executed a joint written contract of guaranty to cover the debts of Lee Company, Inc., a corporation, in its purchase of goods from Continental Can Company, Inc. When Continental Can sued Lee Company for non-payment of the purchases and made both Lees defendants, *695 Mrs. Lee contended that when she executed the contract of guaranty she was a married woman, the wife of W.E. Lee, and that under Sec. 1, Art. XI, of the Constitution, she was immune from judgment because the paper writing she signed was not in the Affirmed form required by the Constitutional provision. Both she and her husband contended that when Lee Company, Inc., failed to pay, the debt then became the debt of W.E. Lee, the husband, for which the separate property of the wife could not be bound, citing Jette v. Harbison, supra. The Supreme Court rejected such contention, and grounded such holding upon the principle that her original signing of the obligation was not primarily to pay the debts of her husband, but to pay the debts of Lee Company, Inc., in which her husband was interested, and in that respect her legal standing was different than in Jette v. Harbison. It is interesting to note that the same Justice wrote the opinions in both cases.
The facts in the instant case are squarely in line with the Continental Can case. In each case the husband and wife signed a written obligation to be legally responsible for payment of the debts of a corporation to a third party. We have hereinbefore held that both the Marinellis were accommodation makers on the note and that St. Pete Auto Parts, Inc., was the primary obligor. This puts the Marinellis here in the same legal status as the Lees were in Continental Can.
In their reply brief, the Marinellis be latedly contend that the debt was in fact the primary obligation of J. Peter Marinelli, a complete reversal of their legal contention theretofore made during this entire litigation, namely, that the debt was the debt of St. Pete Auto Parts, Inc., and that they signed the note individually only to evidence the pledging of their stock as additional collateral for the payment of the corporation's debt to Weaver. But their adeptness in changing legal positions becomes unavailing in the light of our previous holding that they are both accommodation makers of the note.
So the final judgment appealed from must be and is accordingly 
Affirmed.
SHANNON, Acting C.J., and HOBSON, J., concur.
NOTES
[1] This is upon the merits of the case; there was other testimony upon the question of attorney's fee.
[2] The negotiability of the note has no place in the case because it never was negotiated. Weaver was the original obligee in the note and it has never left his hands. He is now the one suing on it
[3] The Uniform Commercial Code enacted into law by the 1965 Florida Legislature as chapter 65-254, becomes effective January 1, 1967, and it is interesting to note that the present Section 674.32 F.S. above quoted, has been brought forward practically intact as Section F.S. 673.3-415 F.S.A.
[4] It is only fair to mention that counsel representing Elizabeth M. Marinelli in this Court did not enter the case until after entry of final judgment in the Court below.
[5] Instances where the Supreme Court has considered a matter as fundamental error, even though not raised in the lower Court, is where a case involves alleged unconstitutionality of a statute, Parker v. Town of Callahan, 1934, 115 Fla. 266, 156 So. 334, or where it involves a question of jurisdiction, Ewing v. Dupee, Fla.App. 1958, 104 So.2d 672, 76 A.L.R. 2d 561, 672, or where the issue reaches down into the legality of the trial itself, particularly in a criminal case, to the extent that a verdict could not have been obtained without the assistance of the error alleged, Ross v. Florida Sun Life Ins. Co., Fla.App. 1960, 124 So.2d 892. But none of these considerations are present here.
[6] The use of the word "apparent" leaves room for the implication that such question raised in the appellate Court for the first time may only be noticed if it is in fact a jurisdictional or fundamental error, thereby necessitating an advance determination of the point on the merits, which would be premature. We do not so construe the rule. We think the rule was intended only to leave the door open for an appellate Court to consider any matter alleged to be fundamental error, without requiring the Court to determine initially that the question raised does have merit, as a condition to considering it at all.
[7] Also, if this Court wanted to be even more technical, we could further foreclose consideration of the point for the reason that the record is conspicuously deficient in establishing that Elizabeth M. Marinelli, whose signature is on the note, is in fact the wife of J. Peter Marinelli. Not a word in the pleadings alleges her to be his wife. And in the testimony at the trial she is variously referred to simply as Elizabeth Marinelli, defendant Elizabeth Marinelli, Elizabeth M. Marinelli, or defendant Elizabeth M. Marinelli. In only two places in the record is the word "wife" used, and in neither instance is the "wife" identified or otherwise tied in with any of the named designations aforesaid. However, appellee in his brief assumes that Elizabeth M. Marinelli is the wife of J. Peter Marinelli, so we will do no less and assume likewise.