MORROW, RUSSELL O., Associate Judge
(dissenting):
This is an appeal from a final judgment entered in the Circuit Court of Orange County. The case arose out of an auto-pedestrian accident. Salient facts disclose that at approximately 2:00 A.M., August 11, 1968, Ringgold Taylor Young, IV, age 20, had stopped his car alongside South Orange Avenue, a four-lane highway, by reason of a flat tire. He apparently sought to hail a passing motor vehicle. He was standing near the center of the highway when struck by an automobile owned by Lucius Bonner McLeod, Jr., and operated by his son. He sustained fatal injuries. The witness first on the scene said, “He was breathing.” A deputy sheriff summoned to the scene testified, “He was breathing very laboriously — ”. Young was taken to the hospital where he was seen about 2:30 A.M. by a medical doctor who, at trial, was asked if he had an opinion as to whether Young did suffer pain and suffering. The doctor’s reply was, “I have no opinion regarding that. He was unconscious when I first saw him, not responsive at any rate.” Young died at 4:50 A.M.
Suit was brought by the personal representative of decedent’s estate under the wrongful death statute, F.S. Sections 768.-01-768.02, F.S.A., for loss of his prospective estate and under the survival statute, F.S. Section 46.021, F.S.A., for medical treatment, bodily injury, pain and suffering of decedent. The jury returned a verdict for $100,000.00 for claims under both statutes.
*608 Further facts reveal that the decedent was a personable young man in good health, was an average C student in school, was in the Marine Corps Reserve, had attended three different junior colleges and was enrolled in a fourth and he was hopeful of becoming a lawyer. He had several different jobs and during the seven months preceding his death he had earned $1,590.00.
Two questions are raised on appeal, and a third question is raised by the court: (1) was error committed in permitting the jury to consider pain and suffering in assessing damages; (2) was the verdict excessive, and (3) had the amount of the verdict as to prospective estate, been reduced to its present value.
On the first question there is no medical testimony as to the decedent suffering pain. There is positive medical testimony that thirty minutes after the accident he was unconscious. There is evidence that at the scene of the accident the decedent was breathing laboriously and with a noise from “apparently” having fluid in his lungs.
Plaintiff-appellee contends that in addition to physical pain and suffering Young suffered mental anguish in seeing the approaching car .coming at him. It is extremely doubtful if evidence shows any conscious pain and suffering and equally conjectural that the decedent standing near the middle of the road apparently attempting to waive down a car would suffer any mental discomfort in so doing. However, if there is any evidence of conscious pain and suffering, doubtful though it may be, the question must be for the jury to determine and the trial judge committed no error in submitting this issue for jury consideration.
The verdict is general, making no separate award for medical expenses, pain and suffering and for prospective estate. Medical expenses were approximately $250.00.
The claim for loss of prospective estate is confined to that estate which the decedent probably would have accumulated and left at the end of his life expectancy. The amount of such an estate must find some reasonable basis in the evidence and then must be reduced to its present money value. Only present money value must be included in the verdict. The fixing of an amount for loss of prospective estate is of necessity uncertain and even in the absence of any direct proof of the probability of accumulating any estate, courts have allowed some recovery. Presumably this is on the rationale that human experience teaches us that the average person does accumulate some estate during his lifetime. It is only when the amount awarded goes beyond that which is fairly within the realm of common experience that the record must produce evidence upon which such an award can be supported.
If we assume that the decedent had a life expectancy of 50 years, the value of the estate which he would have accumulated and left 50 years hence can be reduced to its present money value through the use of recognized mathematical tables or formulas. Thus, $1.00 due 50 years hence may be earned by depositing at the present time $.1407 at 4% compound interest, or $.0872 at 5% compound interest, or $.0543 at 6% compound interest. In other words, depending upon whether the 4%, 5% or 6% rate is used, the present value of $1.00 to be received 50 years hence is 14.07^, 8.72{í and 5.43f, respectively. Conversely, $1.00 deposited at the present time at compound interest would yield 50 years hence the sum of $7,107 at 4%, $11,467 at 5% and $18,420 at 6%. The significance of these figures in the present case is that if we disregard for the moment any portion of the verdict as being for the decedent’s pain and suffering, it indicates that the jury would have concluded that the decedent would have left at his death 50 years hence an estate of $1,146,700.00 on the basis of a compound interest rate of 5%.
The jury would have been justified in using a lesser rate of interest than 5%, *609 and possibly on the present money market would have been justified in using a higher rate. The 5% is used here as illustrative only to demonstrate the lack of a rational predicate in the evidence to sustain the verdict. In the instant case the jury may have been justified in including in the verdict an allowance for the decedent’s conscious pain and suffering, the amount of which is certainly not capable of being mathematically computed as is the present value of a sum to be received at some definite time in the future. Nonetheless, even on the element of human pain and suffering there must be an upper limit beyond which the court will determine as a matter of law that the same is excessive. If we assume the decedent consciously suffered excruciating pain for 30 minutes, we could not reasonably or rationally expect the compensation therefor to be more than a minor fraction of the jury’s verdict. Since there was no apportionment in the verdict, let us assume for the moment that the amount allowed for pain and suffering was one-half of the total verdict or $50,000.00 (a figure which is shockingly excessive even for excruciating pain which at most could last for only 30 minutes). The remaining $50,000.00 would represent the present value of the loss of the prospective estate in the sum of $573,350.00, at the 5% rate. This amount must be viewed as excessive on the limited evidence presented here as to the decedent’s prospects of ever accumulating any significant estate.
Though the appellants’ brief refers to the court’s having instructed the jury that the amount allowed for loss of prospective estate must be reduced to its present money value, our review of the court’s charges to the jury fails to disclose such instruction. The record further discloses that no request was made by the appellants to give this vital instruction; however, it is set forth in Florida Standard Jury Instruction, No. 6.10. The appellants failed to make objection on this point or include it in a motion for a new trial, or to. assign the same as error. This deficiency precludes appellants from raising the question on appeal but does not prevent appellate review. Error of this kind, which goes to the heart of the case by omitting a charge to the jury on fundamental law applicable to the case, must be corrected by the appellate court of its own motion. To do otherwise would permit a miscarriage of justice. Rule 3.7(i), F.A.R., 32 F.S.A.; Marinelli v. Weaver, Fla.App.1966, 187 So.2d 690.
In Norman v. Mullin, Fla.App.1971, 249 So.2d 733, the Second District held such an omission to be reversible error. Though the error was there preserved by defendant’s request for the charge, here we are impelled to exercise the authority and duty of the appellate court to mete out fundamental justice though no such request was made.
From a statement in the final argument of appellee’s counsel we observe counsel’s own statement of decedent’s prospective estate, towit: “So that he might have an estate, a total estate earned during his lifetime, net of his • own maintenance, in the neighborhood of $100,000.00 and I don’t think that is unreasonable at all.”
Counsel thus explains to the jury that $100,000.00 is the total amount decedent would have earned during his lifetime, less his own living expenses. With this amount as decedent’s ultimate cumulative estate, we have no disagreement. Had the jury been instructed by the court to reduce this amount to its present money value, the amount of the verdict for this item of damage would have been $8,720.00 using 5% compound interest. Higher or lower interest rates would vary this present value amount, e.g., the present value of $100,000.00 at 4% over a fifty-year period would be $14,070.00 and at 6% would be $5,430.00.
In that verdict makes no allocation, it cannot be known what amount, if any, had been awarded for pain and suffering. However, the omission of the charge in question left the jury without the funda *610 mental and indispensable tools with which to work and resulted in an erroneous verdict.
I would reverse this cause with directions for a new trial on the question of damages only.